# Richmond.

## SHIPP v. COMMONWEALTH.

### MARCH 27th, 1890.

1. MURDER—*Case at bar.*—Prisoner, after an altercation with deceased, declared he would shoot him if caught off his land; met him soon after, accused him of slander, and aimed a gun at him; and when deceased, unable to retreat, picked up an iron pipe for self-defence, prisoner shot and killed him: *held,* evidence warrants the verdict of guilty of murder in the second degree.
2. IDEM—*Instructions.*—At such trial, the court refused to instruct that, if any reasonable doubt exists in the minds of the jury as to the credibility of any witness, they must give prisoner benefit of such doubt: *held,* no error.

Argued at Staunton.    Decided at Richmond.

Error to judgment of circuit court of Rockbridge county affirming judgment of county county of said county whereby plaintiff in error, Jacob Shipp, was sentenced to eighteen years confinement in the penitentiary for the murder in the second degree of John Hottinger.    Opinion states the case.

*Strayer & Liggett,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

A transcript of the record of the proceedings, discloses that, at the February term, 1889, of the county court of Rocking-

ham county, Jacob Shipp was indicted for the murder of John Hottinger on the 7th day of December, 1888, in the said county. At the March term, 1889, of the said court, the said Shipp was tried upon the said indictment, and was found guilty of murder in the second degree, and was sentenced by the court, in accordance with the verdict of the jury, to a term of eighteen years in the penitentiary. During the progress of the trial, the prisoner took sundry exceptions to the rulings of the said county court, which are embodied in his bills of exceptions.

To the said judgment of the county court, the circuit court of Rockingham county granted a writ of error and supersedeas, and, upon the hearing of the cause, at its October term, 1889, affirmed the said judgment of the county court.

The case is here upon a writ of error to the judgment of the circuit court of Rockingham. Instructions were asked for by the plaintiff in error; some of which were given as asked; some refused; and others, being modified by the court to adapt them to the evidence, were given; and the court of its own motion gave instructions to the jury. This action of the court in refusing and in giving the instructions referred to, is the ground of the first, second and third assignments of error.

The fourth assignment of error is, the refusal of the court, on the motion of the plaintiff in error, to set aside the verdict of the jury as being contrary to the law and the evidence, and to grant a new trial.

In the record the whole evidence is certified, and not the facts proved.

The evidence is, that, in November, 1888, the plaintiff in error, Jacob Shipp, had been ordered by John Hottinger off of his premises for shooting in his orchard and about his home, and for making violent and insolent rejoinder to Hottinger's wife when she called to him, and ordered him to desist. Shipp was very violent upon the occasion to Hottinger, calling him " a God damn son of a bitch;" and, in giving an account of it,

Shipp declared that if Hottinger had crossed the fence he would have lammed both barrels of his gun into him, having both hammers cocked for that purpose. Shipp, more than once, and to various persons, threatened, that, if he caught Hottinger off his land, he would shoot him.

On the 7th day of December, 1888, early in the day, Shipp came to the saw-mill of D. R. Martz, in Rockingham county, Virginia, armed with a gun heavily loaded with No. 3 shot. He found there D. R. Martz, the owner of the mill, and William Fogle, the engineer, and John Hottinger, whose home was a quarter of a mile away. Shipp greeted them all politely, and they all returned his salutation; and they all engaged in a general and pleasant conversation, which was friendly all around. When the steam was up, for which they were waiting, Martz went to his work, and told Fogle, the engineer, to hurry up, as he wanted to get done sawing shingles that day. The steam was put on and the sawing began; and just as Martz had run the saw into the first shingle-block, Shipp walked toward Hottinger and said, "I understand you have been telling some God damn lies on me." Hottinger replied, "I don't know as I have been telling any lies on you." Shipp repeated the said language, with his gun on his shoulder; and as he repeated the language a third time, he put his gun in range and stepped back. Hottinger put his hand in his pocket and drew his knife, and then threw it away and reached for a piece of iron pipe to defend himself with, when Shipp fired into his body, the whole load entering two and a half or three inches below and to the left of the navel, and inflicting a terrible wound two or three inches in length, through which Hottinger's bowels protruded, and of which he died in a few hours in great agony. The engine was back of Hottinger, and he had gotten back as far as he could get, unless he had crept under the engine or gotten over the top of it, when Shipp, standing in a few feet of his victim, fired into his body his heavily loaded gun.

Opinion.

Upon this evidence of both the witnesses, Martz and Fogle, and of the dying man, the jury found Shipp guilty of murder in the second degree.

We think it would have fully justified a verdict of murder in the first degree, as it proves a wilful, deliberate, premeditated killing with a deadly weapon, previously in the hands of the slayer, without provocation, and upon occasion sought and wantonly made by the murderer. It is not within the province of this court to rectify the verdict of murder in the second degree, and assuredly the judgment must stand affirmed as the least penalty which the crime of the plaintiff in error deserves. The refusal of the court to give the first and fifth instructions asked for by the prisoner, is assigned as error. The first instruction asked for by the prisoner is as follows: "The jury are instructed that, before they can find the prisoner guilty of murder in the second degree, or voluntary or involuntary manslaughter, they must believe from the evidence that he is guilty beyond every reasonable doubt; and in weighing and considering the evidence, if any reasonable doubt exist in their mind as to any material facts or as to the credibility of any witness in the case, they must give the benefit of such doubt to the prisoner."

The court thought the words "or as to the credibility of any witness in the case, they must give the benefit of such doubt to the prisoner," improper, and gave, in the stead of the instruction as asked, the following: "That if the jury shall have any rational doubt as to any important fact necessary to convict the accused of any offense whatever, they are bound to give the accused the benefit of the doubt." The instruction, as given by the court, is in the exact words of the instruction given is *Briston's case*, 15 Gratt., in regard to which Judge Robertson, for this court, said: "The court committed no error in substituting, for the instruction asked for by the prisoner, those which were given in their stead, or giving those asked for by the commonwealth's attorney."

The instruction, as asked for by the prisoner in this case, is unintelligible and misleading, and it was properly refused by the court; and the law is correctly stated in the instruction substituted therefor and given by the court.

The fifth instruction, which was asked for by the prisoner and refused by the court, was not supported by the evidence; and, as far as it was warranted by the evidence, it was embraced and given by the instructions which were modified by the court and given; and the instructions which the court gave of its own motion, correctly expound the law applicable to the facts, and we deem it unnecessary to extend them here. Our conclusion is that the court committed no error as to the law of the case, and that the verdict of the jury is undoubtedly right.

The judgment of this court is to affirm the judgment of the circuit court affirming the judgment of the county court, complained of.

JUDGMENT AFFIRMED.